UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

CONSTANCE M. EVERY,               )
                                  )
    Plaintiff,                    )
                                  )
v.                                )  No. 3:16-cv-710
                                  )  Judge Phillips
MEGAN J. BRENNAN, Postmaster General, )
*et al.*,                         )
                                  )
    Defendants.                   )

## MEMORANDUM OPINION

Plaintiff Constance M. Every asserts several claims arising from her employment with the United States Postal Service ("USPS"). Defendants Megan Brennan, Postmaster General for the USPS, and USPS employees Susan Frazier, Victor Condroski, Donna Aaron, Donald Swoopes, Betsy Dykes, and Oscar Irvin (collectively "the individual defendants") have filed a renewed motion for judgment on the pleadings or in the alternative for dismissal or summary judgment [Doc. 51].[1] Defendants have filed briefs and exhibits in support of the motion [Docs. 52, 59, 61] and plaintiff has responded [Doc. 57].

For the reasons set forth herein, the defendants' motion [Doc. 51] will be **GRANTED in part** and **DENIED in part**.

---

[1] Defendant Megan Brennan is the Postmaster General of the USPS and is sued only in her official capacity as the head of the agency [Doc. 41 at ¶ 4]. The individual defendants are sued only in their individual capacities [*Id*. at ¶¶ 5—10].

**I.     Relevant Facts**

Plaintiff began working for the USPS as a Mail Handler Assistant at the USPS Chattanooga Processing and Distribution Center on January 9, 2016 [Doc. 41 at ¶ 11; Doc. 57-2]. The individual defendants also were employed at the USPS Chattanooga facility [Doc. 41 at ¶¶ 5—10], and according to plaintiff, subjected her to a hostile working environment based on "racial/sexual animus and/or out of retaliation" for her protected activity [*Id.* at ¶ 12]. Plaintiff was converted to a career employee on July 23, 2016 [Doc. 41 at ¶ 19; Doc. 57-9]. During the course of her employment with USPS, plaintiff filed four EEO charges, one OSHA complaint, one Whistleblower Act complaint, four union grievances, and one NLRB charge [Doc. 57-1 at ¶ 8].[2] Plaintiff was terminated three times and reinstated twice [*Id*. at ¶¶ 10, 12, 16].

The USPS has a National Equal Employment Opportunity Investigative Services Office which processes all EEO complaints filed by USPS employees nationwide [Doc. 61 at ¶ 4]. Federal sector EEO complaints, including those by USPS employees, are processed as follows: (1) initiation of contact with an EEO Counselor within 45 days of the date of matter alleged to be discriminatory; (2) filing of an "Information for Pre-Complaint Processing," also called an EEO "pre-complaint" or "informal complaint"; (3) counseling sessions with an EEO Counselor, also known as an "EEO Dispute Resolution Specialist"; (4) the EEO Counselor advising the aggrieved person of the right to file a "formal" EEO

---

[2]Although plaintiff states that she filed six EEO charges, it appears that some of the filings to which she refers include the reports from the EEO Counselor/Dispute Resolution Specialist on her complaint in case numbers 1C-371-0058-16 and 1C-371-0076-16 and are not separate charges.

complaint, also known as an "individual" complaint; (6) acceptance or dismissal of the complaint for investigation by the agency; (7) if the complaint is accepted, an investigation which includes preparation of a written report, within 180 days of the filing of the individual complaint; and (8) the agency providing the investigation report to the aggrieved person with a notice of his/her right to request a hearing. These procedures are set forth in detail in 29 C.F.R. §§ 1614.105—1614.108.

  A. <u>EEO Case Number 1C-371-0035-16</u>

Plaintiff filed her first EEO charge on March 14, 2016 [Doc. 61 at ¶ 5; Doc. 61-1], alleging discrimination because of her sex after she was terminated on March 2, 2016 following a workplace accident [Doc. 61 at ¶¶ 5, 7; Doc. 61-1]. Plaintiff filed a second EEO charge on April 12, 2016, alleging retaliation for filing the first EEO charge, which resulted in her second termination on April 8, 2016 [Doc. 61 at ¶¶ 8—9; Doc. 61-2]. These charges were consolidated into EEO case number 1C-371-0035-16 [Doc. 41 at ¶ 26; Doc. 61 at ¶ 10]. Case 1C-371-0035-16 was settled through mediation on May 4, 2016 [Doc. 41, Doc. 61 at ¶ 11]. The settlement mandated that plaintiff would be reinstated to her position with USPS on May 5, 2016 [Doc. 61 at ¶ 12; Doc. 61-3].

  B. <u>EEO Case Number 1C-371-0058-16</u>

Plaintiff filed a third EEO charge on May 24, 2016, which was assigned case number 1C-371-0058-16 [Doc. 61 at ¶ 13; Doc. 61-4]. In this charge, plaintiff claimed race discrimination and retaliation arising from the workplace accident that resulted in her April 8, 2016 termination [Doc. 61-4]. On June 27, 2016, the agency notified plaintiff that it was concluding the processing of her claim and that she had 15 days to file a formal complaint

[Doc. 61 at ¶ 14; Doc. 61-5]. Plaintiff filed a formal complaint on charge number 1C-371-0058-16 on July 11, 2016 [Doc. 61 at ¶ 15; Doc. 61-6].

The agency dismissed this complaint on July 21, 2016, because it was the same complaint as contained in case number 1C-371-0035-16 [Doc. 61 at ¶ 16—17; Doc. 61-7]. Specifically, the agency found that "[t]he issue raised in the instant complaint is merely a reiteration and extension of the previous complaint" [*Id.*]. Plaintiff had 30 days to appeal the decision to the EEO Office of Federal Operations ("OFO"), which she did on August 2, 2016 [Doc. 61 at ¶ 18—19; Doc. 61-8]. The OFO affirmed the dismissal of this complaint on October 28, 2016, and agreed that case number 1C-371-0058-16 presented the same claim as that in settled case number 1C-371-0035-16 [Doc. 61 at ¶ 23—24; Doc. 61-12]. The OFO decision advised plaintiff that she could request a reconsideration within 30 days or she could file a civil action within 90 days [Doc. 61 at ¶ 25; Doc. 61-12].

### C.     EEO Case Number 1C-371-0076-16

Plaintiff filed a fourth EEO charge on August 29, 2016 and it was assigned case number 1C-371-0076-16 [Doc. 61 at ¶ 20; Doc. 61-9]. This charge alleged race discrimination and retaliation, arising from an incident in which she allegedly threatened another employee [Doc. 61-9]. The agency concluded processing this claim on October 7, 2016, and notified plaintiff that she had 15 days to file a formal complaint and she did so on October 19, 2016 [Doc. 61 at ¶ 21; Docs. 61-10, 61-11].

On November 17, 2016, the agency notified plaintiff that it had accepted her formal complaint in case number 1C-371-0076-16, in part, for investigation [Doc. 61 at ¶ 26; Doc. 61-13]. Specifically, the agency accepted her allegation of race discrimination and

retaliation when she was terminated for the third and final time on August 25, 2016 [Doc. 61 at ¶ 28; Doc. 61-13]. The agency notice stated that the investigation would be concluded within 180 days of the date of the filing of her complaint [Doc. 61 at ¶ 29; Doc. 61-13]. A contractor investigator was assigned to the case on November 23, 2016 [Doc. 61 at ¶ 30; Doc. 61-14]. The investigator sent plaintiff written questions and a request for an affidavit on December 8, 2016 [Doc. 61 at ¶ 32; Doc. 61-15]. Plaintiff sent the investigator an affidavit and documentation in support of her complaint on December 19, 2016 [Doc. 61 at ¶ 33; Doc. 61-16].

Plaintiff then filed the instant civil case, initially pro se, on December 26, 2016 [Doc. 1; Doc. 41 at ¶ 33; Doc. 61 at ¶ 34]. Plaintiff states that she filed this case because "the administrative process was an exercise in futility" [Doc. 57-1 at ¶ 18]. On February 1, 2017, the USPS notified plaintiff that her complaint in case number 1C-371-0076-16 was dismissed because she had filed this lawsuit [Doc. 61 at ¶ 35; Doc. 61-17].

In the amended complaint, plaintiff asserts the following claims: (1) hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e, *et seq.*, [Doc. 41 at ¶ 41]; (2) violation of her exercise of free speech [*Id.* at ¶ 43]; (3) retaliatory discharge in violation of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304[3] [*Id.* at ¶ 45]; (4) violation of due process [*Id.* at ¶ 46]; (5) negligent infliction of emotional distress [*Id.* at ¶ 48]; and (6) intentional infliction of emotional distress [*Id.* at ¶ 50].

---

[3]The parties have agreed to the dismissal of the TPPA claim [Doc. 52 at p. 20; Doc. 57 at p. 7].

5

**II.     Standard of Review**

Defendants have presented their motion as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or alternatively, as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or, as a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Because both plaintiff and defendant have submitted materials for consideration which are outside the pleadings, the Court will review the motion as a motion for summary judgment.[4]  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

---

[4]The Court may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting it into a summary judgment motion if the attached materials are referenced in the plaintiff's complaint and are central to the claims, or if the documents are matters of public record. *Kassem v. Ocwen Loan Serv., LLC*, 704 F. App'x 429, 432 (6th Cir. 2017).  The parties have supplied some documents that are referenced in the complaint, but some are not directly referenced in the complaint.  The parties have also supplied affidavits.  Therefore, the Court finds it more appropriate to apply a summary judgment review to the pending motion and notes that plaintiff has not objected to consideration of the motion as such.

475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479—80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

III.   **Title VII Claims**

Defendants first argue that only Megan Brennan, as head of the USPS, is a proper defendant in a Title VII case [Doc. 52 at pp. 14—25]. Plaintiff agrees only as to her Title

7

VII claim [Doc. 57 at p. 7]. The Court agrees and notes that the amended complaint alleges the Title VII claim only as to defendant Brennan [Doc. 41 at p. 8]. The individual defendants were not plaintiff's "employer" within the meaning of Title VII and therefore cannot be liable for any violation of Title VII. *See Bangas v. Potter*, 145 F. App'x 139, 141 (6th Cir. 2005).

The Court will next review plaintiff's Title VII claims as to defendant Brennan, as head of the employing federal agency. It is worth noting that the amended complaint alleges that the USPS "created a hostile work environment based on retaliation and/or race/sex discrimination" [Doc. 41 at ¶ 41].

A. Released Claims

Defendants argue that plaintiff's claims related to her terminations in March and April 2016 have been resolved via the USPS administrative process and therefore must be dismissed [Doc. 52 at pp. 16—17]. As alleged in her complaint, plaintiff entered into a settlement agreement of the claims in case number 1C-371-0035-16 regarding the removal actions in March and April 2016 [Doc. 41 at ¶ 36]. Nevertheless, plaintiff filed another claim regarding the April 2016 removal in case number 1C-371-0058-16. The agency dismissed that claim as duplicative of the settled claim. Defendants argue that the settlement of case number 1C-371-0035-16 terminated the administrative processing of that claim. Thus, defendants contend that plaintiff did not exhaust her administrative remedies as to claims related to the April 2016 removal and the Court does not have jurisdiction over them. Defendants also argue that the boilerplate language in the agency decision in case number 1C-371-0058-16 – "You have the right to file a civil action …

within ninety (90) calendar days" – does not confer subject matter jurisdiction on this Court.

Plaintiff disputes that she re-filed the same claim as those settled because she was subjected to "fresh retaliation" and a "continued … pattern of behavior" upon her return to work following her second termination and reinstatement [Doc. 57 at p. 8]. As defendants note in reply [Doc. 59 at p. 3], plaintiff has not identified any specific conduct alleged in case number 1C-371-0058-16 that was not covered in case number 1C-371-0035-16 other than her general allegations of harassment and retaliation.

As set forth above, case number 1C-371-0035-16 included two consolidated charges regarding plaintiff's March 2, 2016 termination and her April 8, 2016 termination. The settlement agreement in case 1C-371-0035-16 states that the "agreement is final and binding" and is "a full and final settlement of *all issues* arising out of the subject matter" of that case [Doc. 61-3 at p. 1 (emphasis added)]. Yet, case number 1C-371-0058-16 also challenged plaintiff's April 8, 2016 termination [Doc. 61-4]. Accordingly, the agency correctly determined that case number 1C-371-0058-16 was "the same matter" and "merely a reiteration and extension" of the claims in the settled case number 1C-371-0035-16 [Doc. 61-7 at p. 2; Doc. 61-12]. Plaintiff offers no factual or legal argument for the Court to deviate from the well-settled rule that "parties who enter into settlements of Title VII claims waive their right to proceed on the underlying claim." *Jones v. PPG Indus., Inc.*, 937 F.2d 608, 1991 WL 122364, at * 1 (6th Cir. July 9, 1991). In the absence of any challenge to the validity of the settlement agreement, plaintiff has released "all issues"

arising out of her March 2, 2016 and April 8, 2016 terminations. Accordingly, plaintiff's Title VII claims arising out of those events will be dismissed.

B. Exhaustion of Administrative Remedies

Defendants argue that the claim regarding plaintiff's August 2016 termination must be dismissed because she failed to exhaust her administrative remedies [Doc. 52 at pp. 18—20]. Defendants correctly note that the right to sue letter dated October 28, 2016, only related to the claims in case number 1C-371-058-16 and did not include case number 1C-371-076-16 [*see* Doc. 61-12]. Plaintiff claims that she "had sufficiently exhausted her administrative remedies" without sufficient results [Doc. 57 at p. 9]. Alternatively, plaintiff suggests the Court should equitably toll the exhaustion requirement "and deem reasonable compliance" [*Id*.]. In reply, defendants argue, "mere dissatisfaction and impatience with the administrative process is not a sufficient basis" to ignore the exhaustion requirement [Doc. 59 at pp. 4—6].

There is no real dispute between the parties that federal employees must satisfy "rigorous administrative exhaustion requirements and time limitations" before filing a Title VII suit. *See McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)); *Steiner v. Henderson*, 354 F.3d 432, 434—35 (6th Cir. 2003), *cert. denied*, 541 U.S. 990 (2004) (same). As explained by the Sixth Circuit:

> Exhaustion of administrative remedies under Title VII requires strict compliance with the procedures and time limitations set forth in 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1613.281(d). Under Section 2000e-16(c), there is a 180 day waiting period after filing a charge with the EEOC before suit may be filed in federal court. Except in very limited circumstances, two

> requirements must be met in filing a Title VII action in federal court: (1) the complaint must be filed within the time allotted by Title VII and (2) a complainant must have exhausted all administrative remedies. *See Tolbert v. United States,* 916 F.2d 245, 247 (5th Cir. 1990) (stating also that "it seems obvious that anyone who files too early, has, by definition, filed before she has exhausted her administrative remedies"). A "[f]ailure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case." *Id.*

*Askew v. Stone*, 81 F.3d 160, 1996 WL 135024, at *3 (6th Cir.), *cert. denied*, 519 U.S. 857 (1996).

While plaintiff initiated the administrative process regarding her August 25, 2016 termination in case number 1C-371-0076-16, she admittedly did not complete the administrative process and filed this suit before the expiration of 180 days. By filing this suit, plaintiff short-circuited the process designed by Congress to allow the parties to reach a resolution of claims through conciliation rather than litigation. *See generally Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Steiner*, 354 F.3d at 438. Although equitable tolling may be applied to the administrative prerequisites to filing a Title VII suit, tolling should be allowed "only sparingly" and in "compelling cases." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). Plaintiff's only evidence or argument in support of tolling is her apparent frustration with the progress of her claim. While her frustration may be understandable, it does not present a compelling reason to toll or waive the administrative requirements of Title VII. Accordingly, plaintiff's Title VII claims regarding her August 25, 2016 termination must be dismissed.

**IV.  Constitutional Claims**

Plaintiff has asserted constitutional claims against all of the defendants for violation of her First Amendment rights and violation of due process [Doc. 41 at ¶¶ 43, 46]. Although the amended complaint does not specifically mention 42 U.S.C. § 1983, plaintiff does allege that the defendants acted "under color of law" in taking the described adverse employment actions against her [Doc. 41 at ¶ 31]. However, there can be no § 1983 action against a federal agency or official because § 1983 only applies to officials who act under color of state law. *District of Columbia v. Carter*, 409 U.S. 418, 424—25 (1973); *Hendricks v. Governor's Taskforce for Marijuana Eradication*, No. 3:05-CV-377, 2007 WL 3396480, at *3 (E.D. Tenn. Nov. 14, 2007) ("[b]ecause § 1983 only applies to a person acting under the color of state law, the federal government and its officials are not subject to a § 1983 suit"). Thus, to the extent plaintiff has asserted constitutional claims via § 1983, they cannot be maintained.

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395 (1971), the Supreme Court recognized a right to recover damages against federal officials who violate an individual's constitutional rights when a § 1983 claim is not available. However, the Supreme Court has expressly declined to extend *Bivens's* coverage to actions against federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Further, a *Bivens* claim cannot be maintained against a federal officer in her official capacity. *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991). Therefore, plaintiff's constitutional claims against defendant Brennan in her official capacity cannot be maintained.

That leaves the constitutional claims against the six individual defendants (Frazier, Irvin, Aaron, Condroski, Swoopes, and Dykes). It is well established that a *Bivens* action will not lie for claims where Congress has provided an alternative remedial system [Doc. 52 at p. 15]. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). Because of the alternative remedies for employment claims available to USPS employees, the individual defendants contend that plaintiff may not allege *Bivens* claims arising out of her employment relationship with the USPS. *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003), *cert. denied*, 542 U.S. 937 (2004); *see Pipkin v. U.S. Postal Serv.*, 951 F.2d 272, 275—76 (10th Cir. 1991) ("Congress has provided a comprehensive civil service scheme to address [federal employment] disputes … those arbitration procedures preclude plaintiffs' *Bivens* claims"). Plaintiff contends that, because the individual defendants cannot be sued under Title VII, she can only be made whole by suing the individual defendants for the purported constitutional violations [Doc. 57 at p. 10].

As the defendants have noted in reply [Doc. 59 at pp. 1—2], all of plaintiff's claims arise from her employment at USPS. Accordingly, based on controlling authority, comprehensive remedies are available for all of her claims via Title VII and collective bargaining agreements. *See Harper v. Frank*, 985 F.2d 285, 289 (6th Cir. 1993) ("Congress adopted a comprehensive scheme for dealing with challenges to personnel actions of the Postal Service that does not include judicial review"). Therefore, plaintiff's constitutional claims against the individual defendants (Counts Two and Four) will be dismissed.

**IV.    State Law Claims**

All that remain for consideration are two state law claims. The amended complaint asserts a claim of negligent infliction of emotional distress against all of the defendants [Doc. 41 at ¶ 48], or "[i]in the alternative, Plaintiff alleges the Defendants negligently inflicted severe emotional distress on Plaintiff in violation of the Federal Tort Claims Act (FTCA)" [*Id.* at ¶ 49]. Plaintiff asserts a claim of intentional infliction of emotional distress against the individual defendants [*Id.* at ¶ 50]. Neither party has addressed these claims at all.

The Court will not make the parties' arguments for them. Accordingly, this case will proceed solely on these remaining state law claims.


**V.    Conclusion**

For the reasons set forth above, the defendant's motion for judgment on the pleadings or in the alternative for dismissal or summary judgment [Doc. 51] will be **GRANTED in part** as to all Counts One through Four in the Amended Complaint, and **DENIED in part** at to Counts Five and Six. An appropriate order will be entered.


    s/ Thomas W. Phillips
    SENIOR UNITED STATES DISTRICT JUDGE